In the matter of exceptions to the final account of estate of SALLY ANN RIKER, deceased.

[Decided June 21st, 1915.]

1. Evidence *Held* to sustain a finding that a representative of decedent rendered personal services for decedent authorizing his allowance of his claim before proving it at law.

2. On exceptions to final account of a decedent's estate, the testimony of decedent's representative, who had allowed a claim for services rendered by him for decedent as to conversations with decedent, is incompetent.

3. The testimony of the wife of the representative that decedent agreed to pay for the services was competent.

On appeal from the Passaic county orphans court.

*Mr. Francis Scott,* for the appellant.

*Messrs. Schoen & Totten,* for the appellee.

LEWIS, VICE-ORDINARY.

This is an appeal from an order of the orphans court of Passaic county made on the 10th day of December, 1914, in the matter of exceptions to the final account of the estate of Sally Ann Riker, deceased.

This court is in accord with the views expressed by the orphans court in sustaining the exception to the bill rendered by Milton Deeths for the collection of rent from 1908 to 1914, and to the

bill rendered by Annie M. Westervelt for care and treatment of Sally Ann Riker.

The bill of Milton Deeths, amounting to six hundred and thirty dollars ($630), as shown by voucher No. 97, amended, I think should be allowed, and in this respect the order of the orphans court is reversed.

The exception to this bill is taken on the ground that it is excessive, and that some part of it should not be allowed. No attempt, however, is made, by the evidence offered by the exceptants, to show in what respect it is excessive; nor, indeed, is any evidence attacking the claim offered by them. The testimony produced to sustain it shows beyond peradventure that Sally Ann Riker required and received the services for which the bill is rendered. Charles Deeths and others testified that she required constant attention. It appears that both Milton Deeths and his wife, Elizabeth Deeths, waited continuously upon her during the period named in the voucher. The diary of the deceased was produced and shows the services.

Martin Drew testified to the wish of Miss Riker to change her will, so as to pay Deeths for the services, although she had already made her will and apportioned to him a share of the estate.

The testimony on page 72 of the printed book as to Drew's conversation with the deceased is as follows:

"Q. Did you ever have a talk with Sally Ann?

"A. Yes.

"Q. About her affairs?

"A. Yes, sir; she had a talk with me about her affairs. She had heard and knew that I wrote a great many wills for people, and she wished me, she wanted me to write her will, I think it was, and she said that she had not made provision for the extra trouble that she would be to some one, to pay for it, and she wanted me to write another, and I says 'No.'

"Q. Write another what?

"A. I think she asked me to write another will.

"Q. Go ahead.

"A. I said, 'No.' She said, 'Well, my expense is so much more. Some of my heirs have to do so much more for me than the others.' I said the orphans court would have her expenses and the orphans court would take care of that, if you have extra expenses; that is the way I know it to be done, and the orphans court will attend to that if you do not embody it in the will."

Under cross-examination by Mr. Totten, Drew positively stated that Miss Riker had spoken to him about giving something extra to Milton Deeths.

Further corroboration of the desire of the deceased in this respect is given by Gaston Drew. Evidence was produced to show that the charge made by Deeths was reasonable.

In arriving at my conclusion, I have in mind the fact that the evidence given by Milton Deeths as to his conversation with the testatrix must be excluded. Elizabeth Deeths, his wife, however, is a competent witness. She swears that Miss Riker agreed to pay for the services for which her husband charges, and throws light on the whole situation—she, herself, having been steadily in attendance on Miss Riker.

In her testimony on this subject, on page 66 of the printed book, we find the following:

"Q. Did Sally Ann Riker agree to pay for the services that were rendered her?

"A. Yes.

"Q. How did she agree?

"A. She wanted my husband to make out a bill. She said he had taken her in on his floor, which none of the rest would do for her; that if he had not done that she would have had to go to an institution, and she said she wanted him to make out a bill and get paid for what he had done for her.

"Mr. Totten—I object to this upon the ground that it is hearsay.

"The Court—I will allow it.

"Q. Did she say that more than once.

"A. Yes.

"Q. Did she say that to you.

"A. Yes.

"Q. Did she say that to Mr. Deeths in your presence?

"A. Yes.

"Q. Did she say it in the presence of anybody else?

"A. Yes; Mrs. Stagg.

"Q. Did she say it in the presence of anybody else?

"A. Yes.

"Q. Who?

"A. My brother-in-law.

"Q. Who is that?

"A. Mr. Drew.

"Q. Martin Drew?

"A. Yes, sir. Tuesday, as she died Sunday, she made me promise that I would see that Mr. Deeths made out a bill for what he had done for her."

I do not find, as urged by the proctor of the appellee, that the *Egarton Case, 77 N. J. Eq. 419,* is dispositive in this issue. In the *Egarton Case* it is held that an executor's charge against the estate of his testator for services during the lifetime of the testator will not be allowed, where there is not, at least, an intimation in the evidence that, in such testator's lifetime, it was expected or intended that such charge would be made. There appears to be abundant evidence showing that Miss Riker intended and expected Deeths to make some charge.

There is no doubt about it that the court should scrutinize with the greatest of care transactions in which the representative as an individual deals with himself in his representative capacity. It would, undoubtedly, have been much more satisfactory if Deeths had proved his claim, at law, before allowing it; but this was not done, and the case has been heard by the orphans court; the testimony has been given; it is all before me on this appeal, and a disposition must be now made of the claim. As heretofore stated, the evidence seems to be sufficient to sustain the charge for services made by Milton Deeths.

A decree may be entered in accordance with the views above expressed.